Let's take up the next case, People v. Brandon Johnson The argument for the appellate attorney, Derek Zimmel, on behalf of the Office of the State Appellate Attorney General, I represent Brandon Johnson. Two different attorneys failed Mr. Johnson in this alleged shaken baby case. His trial attorney failed to interview the attending doctors or try to contact and hire an expert for the defense until the last minute on the evening trial. And post-conviction counsel had evidence on disputes in the medical community over key issues of shaken baby syndrome, but failed to submit it at the evidentiary hearing, instead only submitting it in a motion to reconsider. This Court should now either, one, reverse Mr. Johnson's conviction and remain for a new trial because of trial counsel's ineffective assistance in counseling, or two, it should reverse the denial of the post-conviction petition and remain for a new third-stage hearing because of post-conviction counsel's unreasonable representation. Now, it's important to note at the outset, this Court, to decide this appeal, this Court does not need to resolve any of the many disputes we've been discussing in the medical community about shaken baby syndrome. This Court does not need to weigh in to decide who's right or who's wrong. It need only recognize that these disputes existed in 2009 in the lead-up to the trial in this case, and that they continue to exist in evolving fashion up to the present day. Then, we have a motion to cite additional authority by the State that was all about the shaken baby syndrome, and you also argue that. So if we don't need it, why do we have it? That's an excellent question, Your Honor. I do apologize for the sheer amount of paper that's been filed in this case. There's no denial that this baby evidently had a skull fracture to the right side of the head, subdural hematomas, two forearm fractures, or two bones in the forearm. So I'm wondering what the significance of this is in your argument. Well, Your Honor, we think the only one of these articles or cases that was before the post-conviction court is the 2009 article by Professor Turkheimer. We've structured our argument around that. I know, but why? There was a dispute in the lead-up in 2009 and even before that to this trial on shaken baby syndrome. The two experts testifying at trial for the State presenting the State's view of shaken baby syndrome, and they had a lot of confidence about their opinions. But there were a number of dissenting viewpoints, even at that time and before that, that would have undermined some of the certainty of the opinions they professed. There were many dissenting viewpoints, and it's not two sides to this issue. There's a variety of different sides, and they've kind of evolved over time. Many of those issues are explained in the article by Professor Turkheimer that was published in 2009. Now, defense counsel, through his ineffective assistance of counsel, failed to even reach out to any defense experts to testify at this trial to explain those other viewpoints. So that side of things was never presented to the jury. The jury did not hear from those other viewpoints. The Turkheimer article, which was presented in the motion to reconsider the denial of the post-conviction petition, explains there's actually quite a bit of dispute on these issues. And the entire point of this, Your Honor, is that had those disputes in the medical community, had the other viewpoints been presented at trial, it would have made Mr. Johnson's explanation of the fall that happened that day with Trisden, that this was an accident, it would have made that more plausible. Isn't it true, concerning that issue of the fall, that he did not report that until the next day and admitted on the day of the injury that he had denied dropping him or bumping into anything with him? That's correct, Your Honor. On the day they presented Trisden to the hospital, they were asked if there had been any falls or anything, and he said no, or at least did not answer. It was at the police station the following day that he gave this explanation. Well, couldn't the jury have decided the case on that alone? I don't believe so, but that, for this ineffective assistance argument, I believe is somewhat beside the point, because the point is the jury didn't have a full mass of evidence before it to make a proper decision. It could be that even with that evidence before the jury, a jury would decide, we don't believe that that happened that way. But it didn't have the opportunity to make that full, a decision based on the full evidence that should have been before it. But isn't it problematic in terms of your being able to demonstrate that your client was prejudiced by ineffective assistance of counsel? I think it plays into that analysis, Your Honor, but I don't think it, I don't find it as problematic as your question may imply. Because the standard for prejudice is, is there a reasonable probability that the result might have been different? And I think understanding the disputes in the medical community over some of these issues and the way that those disputes have changed over time makes it clear that the jury was not given the full picture here. This Court's role is not to decide, would this come out the same way or would it be different? As a matter of, this Court does not need to put itself in the place of the jury in that full sense. It need only decide, is there a reasonable probability that this might have changed the balance? And I think this evidence meets that standard. Now, Mr. Johnson's trial attorney gave ineffective assistance in this case. This is a purely medical case. This, the entire case came down to an understanding of Tristan, a three-month-old baby, his injuries. There was no other evidence. Trial counsel's performance was deficient because he failed to even contact experts to work on this case. Over a period of two years that he held the case, after the first expert that he hired initially backed out of the case, for the next two years he didn't even contact another expert. So he did hire an expert. Initially, Your Honor. And that expert backed out. We do not have the reasons for him backing out. And the two years that passed, do you have any evidence that he tried to contact experts who would not testify for him? We have evidence to the contrary, Your Honor. That he did nothing? He testified in the post-conviction hearing that he did not contact a single other expert. With no explanation as to why? His explanation was that the court would not give him more time to hire an expert. His explanation was that he wanted to hire an expert. And that's what's so troubling about this case. This is not a case where the trial attorney assessed the state's case and decided that he did not need an expert. His testimony in the post-conviction hearing was that he wanted to hire an expert, but he ran out of time. That doesn't make any sense. It doesn't make any sense that he ran out of time. Correct. To me, that makes no sense. Because he had two years to work on this case. He didn't interview any of the attending doctors. The attending ophthalmologist, he never interviewed. Dr. Leonard, the surgeon, pediatric surgeon, never interviewed. Dr. Maria Spivey, the other doctor who ended up testifying in this case, he interviewed her three days before trial after having this case for over two years. And he did that at the last minute. And he filed a motion to continue just before trial in which he argued that if she was going to testify in a certain way as she ultimately did at trial, it might cause him to go out and get an expert. And the state said that's exactly how she's going to testify. The court denied that motion to continue. He went and talked to Dr. Spivey and then was left to simply cross-examine those experts at trial without any expert of his own. Part of the reason, I think, we're left to judge. He doesn't explain that at the post-conviction hearing. He doesn't justify this. So we're left to guess. I think one of the justifications we can insert for him is that he was relying on this initial strategy of challenging language in the charge of records and indictments. That strategy was erroneous as a matter of law. And the state doesn't really challenge that because the prosecution didn't need to prove this extra language in the charge of documents. So arguing against that doesn't get you anything for the defense. That strategy was erroneous as a matter of law. If he was relying on that strategy, it's his reason why he didn't need to interview the attending doctors. And again, they're the attending doctors. These are not hired experts. These are the people who you would interview first in a medical case. These are the people whose testimony is going to be the most important in the case. He does not interview them. And he does not reach out to any defense experts to even review the medical evidence and explain it to them, much less testify in a trial for the defense. He does not do any of these things until the last minute when he realizes that the state has amended the charges to remove some of that language that he wanted to argue against the trial. That's ineffective assistance of counsel. It's certainly deficient performance. And we have a number of cases that say so explicitly. People v. Morris, first district case from 2002, held that it could not be a matter of strategy for counsel not to call witnesses to testify where counsel had explicitly moved for continuance to be able to call those witnesses. That's this case exactly. Counsel wanted to be able to hire an expert. He moved for continuance, and it was denied. So he didn't have an expert. He should have found that expert earlier, and he would have if he had done an adequate investigation of this case. People v. Popoka, a second district case from 1993, held that the failure to call an expert was ineffective assistance of counsel where counsel did not even inquire for an expert, and an expert would have significantly strengthened the defense that they already had. That court also held that we cannot assume strategy is the reason and justification for not hiring an expert when counsel did not make that assertion himself. Here, counsel did not claim this was strategy. His explanation, astoundingly, his explanation was that he wanted to hire an expert, but that he couldn't because the court would not give him more time. Again, that's talking about that last moment of continuance just before trial. He did not bother or even attempt to explain the two-year period that passed where he did nothing on this case. Now, the failure to hire an expert is deficient performance. The failure to conduct an adequate investigation of the prosecution's case is also deficient performance, and those two things dovetail. If he had done the investigation, he probably would have learned what the state's case was, and he might have consulted an expert earlier. Both of these things are deficient performance, and that's made clear by a whole slew of Supreme Court cases, people v. Tompkins, people v. Johnson, people v. Perez. They all hold that it cannot be an issue of strategy to not hire an expert or not bring a testimony if you have not done an adequate investigation first. It's only strategy if you actually, you can only make a strategic decision if that is a well-informed judgment based on an investigation. The charging document that was ultimately filed, though, removed this shaken baby syndrome from the instrument. As I understand, correct me if I'm wrong, he was charged with aggravated battery of a child, alleging he shook and beat him, causing a skull fracture and a broken arm. As I understand shaken baby syndrome, this is a syndrome that's detected usually through a CT scan or something like that where you see evidence of brain damage. This is damage to the gray matter as opposed to a broken bone, which is a skull. So I'm still having a tough time understanding why we're all into this shaken baby syndrome stuff when he was convicted of something that didn't include that. Or maybe I'm wrong. Correct me if I'm wrong. It did include that, and I would move away from it. It did include that? It did include shaken baby syndrome. So I would move a little bit away from the charging document because the state has made clear their position is they don't have to prove mechanism of injury. So they left that as something to question or for everyone else to figure out. The two experts that testified, the attending doctors, Dr. Spivey and Dr. Leonard, Dr. Spivey in particular testifies at length about shaken baby syndrome. That was the entirety of this case. Now, there are other injuries that occurred in this case, the broken arm, the skull fracture, but the testimony by the experts is that there had to be some kind of acceleration-deceleration injury. She explicitly calls shaken baby syndrome. She never specifies the mechanism of injury, and we're left to guess what that might be. But this is problematic where the same experts are testifying that it could not have been anything else. It could not have been a fall, with Mr. Johnson falling, accidentally tripping, falling while holding a three-month-old Tristan, falling onto a coffee table and onto the floor, with the adult body pressing down on the three-month-old baby beneath it. Their certainty needed to be tested with opposing experts because their certainty is not reflective of the broader views of the medical community as a whole. There are other doctors who believe differently than these opinions, and those differences, those disputes, are well-summarized in the Terpheim article. They're also well-summarized in the variety of other court opinions from around the country that have addressed this issue. And that takes me to the second part of that argument, which is that prejudice occurred here. There's a number of courts that recognize the existence of this serious dispute and series of disputes on shaken baby syndrome. These disputes have become so large that the syndrome has been renamed to be a victim of child trauma, and we've moved away from that initial characterization. Thank you, counsel. Arguments for this day. Maine Police Court. Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. Justice Cates, I believe you kind of hit the state's argument on the head as far as what we're pointing out, and that is that this is not a shaken baby case. The state did not have to prove that baby Tristan suffered from shaken baby syndrome. It did not have to prove that he was shaken at all. It only had to prove that the defendant knowingly caused great bodily harm to baby Tristan. Now, baby Tristan had a severely fractured skull on the right side. He's got a broken arm on the left side. He's got bilateral subdural hematomas. He's got severe retinal hemorrhages. It doesn't matter whether the defendant inflicted these injuries by shaking him or by beating him or by throwing him, and it matters that he caused these injuries. And the defendant's own version of the accident simply cannot account for all of these injuries. Now, there's something I have to point out here. It's in the defendant's reply brief, and it's been said here again today, that the defendant's version of what happened is that he tripped over the bouncy seat and he fell. He fell with the baby and landed on top of it. There is no evidence in this trial that that's what happened. The defendant's statement is that he tripped over the bouncy seat and that baby Tristan hit his head on the coffee table. It was purely a hypothetical that defense counsel used at trial that added this, and he labeled it as a hypothetical, I believe, but it definitely was a hypothetical. It was not the defendant's statement to the police that he fell on top of this baby. The defendant never told the police that. That was never admitted to trial other than as a hypothetical presented by the trial court. Now, defendant criticizes the state as saying, when I say in my brief that the defendant dropped the baby, again, there's nothing to say that he, I guess in this fell on top of the baby thing, they both went down together and he landed on top of it. Not in the record. Therefore, I make an assumption that if you're carrying a baby, you trip, and the baby hits a coffee table, that you drop it. That's my interpretation of the facts. As far as all of the mountainous law journal articles that have been presented, the reason that I presented the case of the journal article to this court is because it basically says what I believe to be the case, is that there is a very small cadre of paid experts who are testifying as expert witnesses in these shaken baby syndromes cases and saying that there's no such thing as shaken baby syndrome and that a shortfall can cause it. They're a very small group. And to say that this is a case, and this is what we need to remember, this is a case of ineffective assistance of counsel. That means, has defendant carried his burden of proving that the counsel's actions were professionally unreasonable, and has he affirmatively proved prejudiced? If 95% of the medical experts think that the symptoms that baby Tristan had were caused by shaking and 5% doesn't, then I don't think you can say, and I'm making up that number. There is more controversy than 95 to 5 about the medical science, wouldn't you agree? Yes, probably so. But having said that, I'm sorry, did I interrupt you? No, I do have another question. Having said that, I think that the overwhelming, if you look at unbiased sources, for example, the American Pediatric article that we attached to our opening brief, an unbiased source consisting of anyone who treats children, basically, who overwhelmingly say that these symptoms are caused by shaking, not by dropping. But when you add into that the fractured skull and broken arm, you get back to this same point that the defendant severely injured this baby. But the differences about the medical opinions and controversies were not brought forward in the post-conviction hearing, were they? Were not developed? Could you restate your question? Those controversies were not brought before the trial judge at the hearing. I don't know that there is a duty to bring a controversy that is supported by a very small percentage of the medical community to a post-conviction petition or to a jury. And that is what I believe to be the case, which is that there is only a very small community of medical people that don't believe that this triad, as it's called, can be caused by things other than shaking babies. And I think the important... Here's another thing that I'd like to add. Is that Dr. Turkheimer, law professor of Turkheimer, is not a doctor. She's a law professor. The other articles cited by the defendant, one has a co-author of four authors, one of them is a doctor. But basically we're talking about lawyers telling us about medicine. And I don't think that you can say... Because really this is what it comes down to. The defendant's not saying just that he should have gotten an expert. He's saying he should have gotten an expert that would testify in line with Ms. Turkheimer's law review article. And I think that's very evident in Dr. Sapala saying, yeah, give me those records, I'll look at them. Whoa, I don't want it. And by the way, all of my colleagues are saying, don't take this case. There's only one thing to be taken from those two facts, and that is that this is not a case that an expert could testify for the defendant on. That is why I believe he didn't contact any other experts. He's been told this is an expert that he'd used before, and he respected him. This guy said he would look at the case. Then he backed out. And all of his colleagues said, we don't want it. Ms. Shanahan, I'm sorry to interrupt, but did you have another question? No, ma'am. We're discussing a lot of the facts. This was the result. The reason we're here is the result of a second stage post-conviction hearing, right? Third. Third? I thought it was second. Third. Third, okay. So it seems that there's a very high burden here by the defendant. Correct. And we're not talking about that. I mean, we seem to be talking about facts that almost were provided just for a constitutional question. And I'm concerned that we're focused on a first stage instead of a third stage. So could you discuss that a little bit for me? Absolutely. That's why I was getting back to why I mentioned the two prongs that we're dealing with here is, were his actions professionally unreasonable? And has the defendant affirmatively proved prejudiced? Talk about the prejudice here. Why is there no prejudice? I think one of the things we have to recognize, and this is a long record, and this is not an attorney that walked in there unprepared. His cross-examination of the doctors in this case revealed that he had carefully read their reports, that he had done a lot of research on not just the wide thing of shaken baby syndrome but of subdural hematomas, of retinal hemorrhages, of the specific. He got a lot of concessions from these experts. He had some real bad facts going in here, as I believe Justice Moore, you pointed out. He lied to the police. In Harrington v. Richter, the United States Supreme Court says, and I love this quote, Strickland does not enact Newton's Third Law for the presentation of evidence requiring for every prosecution expert an equal and opposite expert for the defense. That's what Richter stands for, is that you don't have to have an expert if you can accomplish the same thing through cross-examination and it is sometimes better to try to case the pervasive suspicion of doubt than to strive to prove a certainty that exonerates. It was easier for him to take the state's experts and point out everything, all of the things that he could criticize about them and to get concessions from them What about the cumulative effect? What about the failure to include a lesser included? With all the controversy swirling around this issue, what about Carl Runge's failure to offer a lesser included? To the best of my knowledge, that's never come up at any time. I don't believe that it's... Well, in the order I'm looking at, it says that the decision not to ask for a lesser included was trial strategy. I'm sorry. I didn't hear the very first thing you said. I said, I'm looking at the order that was entered October 22nd and the court deals with the issue of the failure to ask for a lesser included instruction was trial strategy. So you don't see that as an issue? I think it's absolutely positively trial strategy. I would like to, with your permission, return to your question about prejudice. Sure. I'm looking for that. Okay. The defendant admitted that his actions led to the baby's injuries. He conceded at the post-conviction hearing and I'm quoting here, I agree that all of those injuries couldn't have been caused by one window. He told the defense... When the trial court said that he thought the defense counsel did a very good job, the defendant agreed with him. In his opening brief, the defendant goes step by step through each of baby Tristan's individual injuries to point out weaknesses in the testimony of the state's witnesses. Now I ask this court, how do we know about those weaknesses? Simple. Because defense counsel brought them out. Defense counsel brought them out through cross-examination, which is an equally valid way to establish the weaknesses of the state's case rather than hiring an expert. And again, I go back to the fact that the defendant didn't just lie to police. He lied to the baby's mother. He lied to the treating doctors at the local hospital. He lied to the social services worker who took the initial intake on the baby. He lied to the treating physicians. These are all at times critical. Seconds are ticking by when they need to know what happened to this baby. Did he fall? No. Did you drive? No. That is such a guilty conscience. I think with all of these concessions, with all of these facts, it's difficult to imagine how a paid expert could have done anything more than what was done at trial. Are there any other questions? Thank you, counsel. Thank you. May it please the Court? Counsel wanted to hire, the trial counsel wanted to hire an expert in this case. The only reason he did not hire one was that he ran out of time. He also didn't have any contact with any other experts for the rest of the duration of this case. None of that is a dispute. This is de facto deficient performance of the patient and his family. Not only is it the prejudice problem of straight women. Now, the attending doctors who testified at trial reluctantly, very reluctantly, admitted that each one of three-month-old prison-aging youths could have resulted from the accidental fall that Mr. Johnson described. Each one of them. They were most reluctant on the injuries that the sedentary hematoma and the retinal hemorrhages, which are often associated with shaken baby syndrome. That is why this case is about shaken baby syndrome. Because their reluctance to admit that a short fall, a short accidental fall, could have caused those injuries often associated with shaken baby syndrome and explained to be the result of shaken baby syndrome by Dr. Spivey. That's at the cross of this case. But what you've just described doesn't help your case, in my view, because you've just told me that there was effective cross-examination that brought information in front of the jury that, in fact, there was reluctance. So he obviously did cross-examine these physicians, right? Absolutely. And pretty effectively. I would say he did okay. He confused some of the major injuries, which if you had an expert to explain to him, he might not have done that. He also lost his place numerous times, and he read directly from medical journal articles without explaining them to the jury. So he got concessions sometimes, but they were never explained. And reading through the fact section of the opening brief, I think you would agree that this stuff is pretty confusing. The point is, this was not a slam-dunk case for the prosecution, as the state makes out. This was a somewhat close case because the accidental fall scenario, Mr. Johnson holding his son, falling to the ground, hitting the baby's head on the table, that could have been an accidental fall. These injuries, horrific as they are, could have resulted from an accidental fall. And a defense expert who could have explained the disputes in the medical community over shaken baby syndrome and these types of injuries could have explained the short-fall literature on this issue. Now, the state says that there's no evidence in the record that they fell together. And that's key to this because this was a crush injury, Mr. Johnson falling on top of the baby versus just dropping the baby on the floor. But it's from his statement to the police. Mr. Johnson said, I picked him up, and I'm quoting, I picked him up and accidentally fell over his balancing chair with him still in my arms. With him still in my arms. Dropping doesn't appear anywhere in the record. The state invents that. This is the evidence in the record. An expert for the defense who could have explained these disputes, who went through the key issues in this case, could have created reasonable doubt in this case. And trial counsel wanted an expert in his own words and only did not get one because he ran out of time. This is ineffective assistance of counsel. Now, this court has another remedy available to it, which is to find that post-conviction counsel rendered inadequate representation by failing to put forward any evidence of prejudice in this third-stage evidentiary here. He submitted the Turkheimer article only in a motion to reconsider. And the Guzman case, People v. Guzman, explains why that falls below the reasonable level of representation we require of post-conviction counsel. There, the attorney failed to amend the petition to include any allegation of prejudice under Strickland as the trial attorney. The court dismissed the petition, and then the attorney tried to amend it after that ruling to include that necessary prejudice. But a notice of appeal had already been filed, and the court no longer had jurisdiction to consider it. The appellate court found that that was inadequate representation, and that case had to go back to put forward a new third-stage suit. That is the alternative remedy available to this court, and it is squarely within the logic of the case. And this court should adopt that remedy and the alternative if it chooses not to reverse Mr. Johnson's conviction and remain friendly with trial. Thank you. Thank you, counsel. We'll take this case under advisement and issue a written ruling. The court will be in recess. All rise.